IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

AGENCY SERVICES OF ARKANSAS, *
INC. d/b/a THE ASA GROUP, *
 *
   Plaintiff, *
 *
vs. *  No. 4:14CV00012 SWW
 *
STACY J. MONGAR and *
MICHAEL MONGAR, *
 *
   Defendants. *

**Memorandum and Order**

   Before the Court is the motion of separate defendant Michael Mongar to dismiss.

Plaintiff responded to the motion and defendant filed a reply.  For the reasons stated below, the

Court finds the motion should be granted.

**Background**

   Plaintiff Agency Services of Arkansas, Inc. d/b/a The ASA Group ("ASA") is an

Arkansas corporation with its principal place of business in Little Rock, Arkansas.  Defendants

Stacy J. and Michael Mongar are married to each other and are residents of South Dakota.  On

July 7, 2011, Stacy entered into a two-year contract with ASA.  The contract called for her to

"support the marketing, solicitation, and servicing of all products provided by the Employer to

insurance agents, brokers, and registered representatives in the Territory assigned by the

Employer" and to perform "such other duties and responsibilities as may be assigned by the

Employer from time to time in keeping with the status of Employee's position."  Compl., Ex. 2

("Agreement") at ¶ 2.b.  Mrs. Mongar also agreed not to "use, for [her] own benefit or the

benefit of others, or disseminate or otherwise disclose any of the Confidential Information, either during the term of [her] employment by Employer or thereafter." *Id.* at ¶ 4.b.

On March 14, 2013, Stacy completed an application for life insurance for Leonard and Leslie Sumption with Nationwide Life & Annuity Insurance Company ("Nationwide").  The owner and primary beneficiary designations were marked "TBD," or "to be determined."  The policy amount requested was $10,000,000.00.  Compl. at ¶ 7.  ASA alleges that "[f]or the next several months, ASA staff and personnel assisted Stacy to underwrite and process the application with Nationwide."  Compl., ¶ 8.  In May 2013, her husband, Michael, an independent insurance agent, accepted an appointment with Nationwide. *Id.*  In July 2013, Stacy rescinded the Sumption life insurance  application, noting that she "lost control of the client to their Northwestern Mutual advisor."  Compl., ¶ 9.

ASA complains that subsequently, "[i]n July 2013, this particular application was placed in force as a trust policy, and the commission was paid by Nationwide to Michael Mongar.  Then, on August 21, 2013, Stacy J. Mongar resigned from her employment with ASA." *Id.*  ASA contends that the Mongars' actions caused or will cause ASA to lose over $440,000.00 in commissions, overrides, and renewals.  ASA alleges that, "[U]pon information and belief, and because he was Stacy J. Mongar's husband, and due to the coincidental timing of the Nationwide appointment, Michael Mongar knew about the Agreement and Stacy J. Mongar's employment with ASA and knew that the Sumption application and subsequent commission were the property of ASA."  Compl., ¶10.

ASA filed a complaint in state court on December 13, 2013, alleging claims for breach of contract and breach of fiduciary duties against Stacy and claims for intentional interference with

2

contractual relation and business expectancy and conspiracy to breach fiduciary duties against

Michael.  Defendants removed the case to federal court on January 7, 2014.  Mr. Mongar moves

for dismissal of the claims against him pursuant to Federal Rules of Civil Procedure 12(b)(2),

lack of personal jurisdiction, and 12(b)(6),  failure to state a claim.

### Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss

claims for lack of jurisdiction over the person.  To defeat a motion to dismiss for lack of personal

jurisdiction, a plaintiff need only make a *prima facie* showing of jurisdiction.  *Dakota Indus.,*

*Inc. v. Dakota Sportswear, Inc*., 946 F.2d 1384, 1387 (8th Cir. 1991).   Such a *prima facie*

showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented

with the motions and opposition thereto."  *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072

(8th Cir. 2004).  A plaintiff who seeks to establish personal jurisdiction carries the burden of

proof, and the burden does not shift to the party challenging jurisdiction.  *Laseraim Tools, Inc. v.*

*SDA Mfg., LLC,* 624 F.Supp.2d 1027, 1030 (E.D.Ark. 2008).  Jurisdiction need not be proved by

a preponderance of the evidence until trial.  *Dakota*,  946 F.2d at 1387.  "If the district court does

not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the

facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor

of that party."  *Id*. (citations omitted).

Under Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss a complaint

that fails to state a claim upon which relief can be granted.  In considering a motion to dismiss

under Rule 12(b)(6), all facts alleged in the complaint are assumed to be true.  *Doe v. Norwest*

*Bank Minnesota., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997).  Dismissal is appropriate if it

3

appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle the plaintiff to relief.  *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).  The Court is not "bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662 , 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## Discussion

1.  Personal Jurisdiction

A federal court sitting in a diversity action may assume jurisdiction over a nonresident defendant to the extent permitted by the long arm statute of the forum state.  Arkansas's long arm statute permits the assertion of jurisdiction to the maximum extent permitted by the Due Process Clause of the Fourteenth Amendment, which permits the exercise of personal jurisdiction over a nonresident defendant who has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)(quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

The Supreme Court has identified two types of personal jurisdiction: general and specific. General personal jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of those contacts.  *See Helicopteros Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).  Specific personal jurisdiction exists only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state.  *Id* at 414. "Those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its

4

courts as a general matter." *Pangaea, Inc. v. The Flying Burrito LLC*, 647 F.3d 741, 746 (8th Cir. 2011).

When deciding a personal-jurisdiction issue, this Court considers five factors to determine whether the exercise of jurisdiction comports with due process: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Dakota*, 946 F.2d at 1390. "Of these factors, the first three are the most important." *Id.*

The claims against Michael revolve around an application for life insurance his wife was handling for the Sumptions in connection with her employment with an Arkansas company. According to his affidavit, Michael has never been to Arkansas or transacted business in Arkansas. He, along with a broker who lives and works in South Dakota, started working on the Sumption matter toward the end of 2010 and the beginning of 2011. The Sumptions, residents of South Dakota, were considering purchasing a life insurance policy or policies in connection with their estate planning and were also working with an estate tax attorney and an accountant, both of whom were located in South Dakota. Def's. Mot. to Dismiss, Ex. A (Aff. of M. Mongar). Mr. Mongar argues it would offend traditional notions of fair play and substantial justice to force him to litigate in a state where he has no relationship.

In support of its claim that the Court has general personal jurisdiction over Michael, ASA asserts that while Stacy was employed by ASA, Michael participated in a group health insurance policy and submitted several claims. After Stacy's employment was terminated, he continued to be covered by the policy as an ASA employee from September through December 2013. Each

month he mailed a check to ASA for the premium and then ASA paid the premiums to the health

insurance company.  During Stacy's employment with ASA, Michael sold at least one insurance

policy through ASA.  Also, during 2012 and 2013, ASA supported financially the South Dakota

softball team on which the Mongar's daughters played.  These are examples, ASA argues, of

Michael's continuous and systematic contacts with the State of Arkansas.

"A state may exercise general jurisdiction if a defendant has carried on in the forum state

a continuous and systematic, even if limited, part of its general business; in such circumstances

the alleged injury need not have any connection with the forum state."  *Steinbuch v. Cutler*, 518

F.3d 580, 586 (8th Cir. 2008).  The Court finds ASA fails to carry its burden of establishing

general personal jurisdiction over Michael in Arkansas.  There are no allegation or evidence to

establish Michael has ever been to Arkansas, transacted business in Arkansas, or sold a policy of

insurance to any client in Arkansas.  Further, South Dakota's interests outweigh those of

Arkansas in resolving this dispute that concerns a contract for insurance applied for and issued to

citizens of South Dakota and in which all involved parties reside in South Dakota.  The Court

finds it would violate due process to find general personal jurisdiction based on the facts of this

case.

Specific personal jurisdiction is proper "only if the injury giving rise to the lawsuit

occurred within or had some connection to the forum state, meaning that the defendant purposely

directed its activities at the forum state and the claim arose out of or relates to those activities."

*Id*., 518 F.3d at 586.  There is no contention that Michael conducted any activity in Arkansas that

could give rise to the claims set forth against him.  Instead, ASA relies on the conspiracy theory

of personal jurisdiction.  In *Gibbs v. PrimeLending*, 381 S.W.3d 829, 834 (Ark. 2011), the

Arkansas Supreme Court held that the conspiracy theory of personal jurisdiction does not violate Arkansas's long arm statute.

Jurisdiction based on a conspiracy theory is established when "(1) two or more individuals conspire to do something (2) that they could reasonably expect to lead to consequences in a particular forum, if (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state . . ." *Gibbs*, 381 S.W.3d at 832 (citing *Cawley v. Bloch*, 544 F.Supp. 133 (D.Md. 1982)).  "[A] bare allegation of a conspiracy between the [non-resident] defendant and a person within the personal jurisdiction of the court is not enough" to confer personal jurisdiction over the non-resident defendant.  *Stauffacher v. Bennett*, 969 F.2d 455 (7th Cir. 1992).  "A plaintiff is required to plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy.  'Mere allegations of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court.' *Baldridge v. McPike, Inc.,* 466 F.2d 65, 68 (10th Cir.1972)." *SFRL, Inc. v. Galena State Bank and Trust Co.*, 2011  WL 4479065 * 4 (D.S.D. Sept. 11, 2011).

ASA argues Michael is subject to jurisdiction because of Tracy's contacts with Arkansas. ASA alleges that Michael participated in a conspiracy with Stacy " to take the commission from the Sumption life insurance policy from ASA for their own household." Compl. at ¶ 24.  The overt acts Tracy committed while an employee of ASA were to complete an application for life insurance for the Sumptions with Nationwide, to obtain the assistance of ASA staff and personnel to underwrite and process the application, and to rescind the application

through ASA's office.  ASA argues that these actions, if committed by a non-resident, would

subject the non-resident to personal jurisdiction under Arkansas's long arm statute.  As a co-

conspirator, Stacy's acts are attributable to Michael.

Mr. Mongar states that his involvement with the Sumptions and life insurance policies

began in 2010 or 2011.  He states the Sumptions were considering the purchase of one or more

life insurance policies in connection with their estate plan, and a lot of variables were involved.

Other professionals located in South Dakota were also involved in the Sumptions 'estate

planning.[1]  All his activities occurred in South Dakota.  All Stacy's activities in connection with

the Sumption matter occurred in South Dakota as well.

ASA alleges "[u]pon information and belief, and because he was Stacy J. Mongar's

husband, and due to the coincidental timing of the Nationwide appointment, Michael Mongar

knew about the Agreement and Stacy J. Mongar's employment with ASA and knew that the

Sumption application and subsequent commission were the property of ASA."  Compl. at ¶ 10.

The Court finds ASA fails to make a *prima facie* showing that Michael participated in a

conspiracy with knowledge of its action or effects in Arkansas so that he can be said to have

purposefully availed himself of the privilege of conducting business in Arkansas, thereby

invoking the benefits and protections of its laws.  The Court therefore concludes that ASA has

not met its threshold burden of establishing that this Court's exercise of personal jurisdiction

over Michael under the conspiracy theory would satisfy due process.

2.  Failure to State a Claim

Even if the Court found it has personal jurisdiction over him, Michael argues that ASA

---

[1]Def's. Br. in Supp. of Mot. to Dismiss, Ex. A (Mongar Aff.).

fails to state a claim for relief under either of its theories of recovery.

In order to establish a claim for interference with a business expectancy, a plaintiff must establish (1) the existence of a valid business expectancy; (2) knowledge of the expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the expectancy; and (4) resultant damage to the party whose expectancy has been disrupted. *Baptist Health v. Murphy*, 373 S.W.3d 269, 281 (Ark. 2010).

> Our law also requires that the conduct of the defendants be at least 'improper,' and we look to the factors in section 767 of the *Restatement (Second) of Torts* for guidance about what is improper. In determining whether an actor's conduct is improper, consideration is given to the following factors:
> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference and the relations between the parties.

*Id*. at 282 (citations omitted).

ASA alleges it had a valid business expectancy in a commission from a life insurance contract based on the fact that an application was submitted.  The submission of the application by the Sumptions created only the possibility that it would be consummated and a commission be paid.  Arkansas law holds that the possibility a party will choose to do business with a plaintiff constitutes a contingency that will defeat a claim of business expectancy.  *Mercy Health Sys. of Northwest Arkansas, Inc. v. Bicak*, 383 S.W.3d 869, 876 (Ark. App. 2011)(hospital's business expectancy was contingent on whether its patients might or might not return to it for health care in the future).  *See also Donathan v. McDill*, 800 S.W. 2d 433 (Ark. 1990)(an

expectancy subject to a contingency, which occurred, is not tortious interference with a business

expectancy).

In addition, there are no facts to establish that Michael did anything improper.  ASA

knew that Michael was a competing agent and his actions are consistent with an attempt to make

a living as a life insurance agent.

ASA also claims that Michael conspired with Stacy to breach her fiduciary duty.  It

asserts Stacy "failed to disclose the truth about diverting the Sumption life insurance commission

to her husband, who had only recently received an appointment with Nationwide, while trying to

conceal the facts from ASA by advising that a Northwestern Mutual agent had taken control of

the case."  Compl. at ¶ 21.  ASA alleges Michael "entered into a conspiracy to take the

commission from the Sumption life insurance policy from ASA for their own household."

Compl. at ¶ 24.

> To prove a civil conspiracy, a plaintiff must show that two or more persons have
> combined to accomplish a purpose that is unlawful or oppressive or to accomplish
> some purpose, not in itself unlawful, oppressive or immoral, but by unlawful,
> oppressive or immoral means, to the injury of another.  A civil conspiracy is not
> actionable in and of itself, but a recovery may be had for damages caused by acts
> committed pursuant to the conspiracy.  A civil conspiracy is an intentional tort
> which requires a specific intent to accomplish the contemplated wrong.

*Faulkner v. Arkansas Children's Hosp.*, 69 S.W.3d 393, 406 - 407 (Ark. 2002)(internal citation

omitted).  ASA must plead facts sufficient to show that Michael "knowingly entered into a

conspiracy" and "in entering in to the conspiracy, had the specific intent to harm" ASA.  AMI

714, Issues-Civil Conspiracy (2014).  ASA alleges Michael committed overt acts in furtherance

of the alleged conspiracy, including seeking an appointment with Nationwide, endorsing the

check from Nationwide, and depositing the check into his bank account.  Compl. at ¶ 26.  ASA

argues it is reasonable to infer from the facts alleged that Michael conspired with his wife with the specific intent to harm ASA by diverting ASA's business to himself.

The Court finds, even assuming all the facts in the complaint to be true and construing all reasonable inferences most favorably to the plaintiff, that there is no support for the conclusion that Michael entered into a conspiracy with Stacy or intended to harm ASA.

## Conclusion

IT IS THEREFORE ORDERED that Separate Defendant Michael Mongar's motion to dismiss [ECF No. 4] is granted.

DATED this 2nd day of May, 2014.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE